610 P.2d 546

**In the Matter of the Application for and Protest Against Application for Transfer of Water Right No. 11–0290 in the Name of Agricultural Products Corporation.**

**BEKER INDUSTRIES INCORPORATED, formerly Agricultural Products Corporation, Applicants-Appellants,**

v.

**GEORGETOWN IRRIGATION DISTRICT, Protestant-Respondents.**

No. 12938.

Supreme Court of Idaho.

April 18, 1980.

A. Bruce Larson of Transtrum & Budge, Soda Springs, for applicants-appellants.

Kent W. Foster of Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondent.

McFADDEN, Justice.

This is an appeal from a summary judgment of the district court dismissing applicant-appellant Beker Industries' (Beker's) appeal from a ruling of the Director of the Department of Water Resources dismissing Beker's application for transfer of the point of diversion, and place and nature of use of its water right.

The principal issue before the court in this appeal is whether the Director of the Department of Water Resources has the statutory authority to approve an application by a holder of a water right to change the use of that water right from agriculture to manufacturing.

Protestant-respondent Georgetown Irrigation District (GID) is entitled to divert up to 70 cubic feet per second (cfs) of water from Georgetown Creek between April and October for irrigation. It obtained rights to this water by decree of the federal district court for the district of Idaho in *Utah Power & Light Co. v. Last Chance Canal Co.*, (known as the "Dietrich Decree"), July 14, 1920.

In the mid-1950's Central Farmers, Inc. acquired real property in Georgetown Canyon which included 104 shares of stock in GID. Subsequently these shares of stock and apparently the real property as well were transferred to El Paso Products Co., and then to Agricultural Products Company, which later merged with Beker Industries. The surviving corporation is applicant-appellant, Beker Industries (Beker).

Because Beker wishes to produce elemental phosphorous in Georgetown Canyon, it petitioned the Department of Water Resources (DOWR), on August 2, 1974, to allow it to make a change in point of diversion, place of use, and in nature of use of the water represented by its 104 shares of stock in GID. The change in place of use was to be to a place "several miles upstream" from the land which the 104 shares of stock had originally been used to irrigate; the change in point of diversion was to be to a place "some distance upstream"

from the first of GID's diversion works; and the change in nature of use was to be from agricultural-irrigation to manufacturing.

GID refused to consent to the requested changes, and protested to DOWR. On October 18, 1974, the director of DOWR held a hearing, at which the parties agreed to submit two issues for resolution before any fact finding by the director. These were, first, whether GID's consent to the proposed changes in point of diversion and place of use was required, and second, whether, in any case, DOWR had authority to permit a change in the nature of use of an established appropriation. These same two issues are the essence of this appeal.

On December 26, 1974, the director of DOWR issued his memorandum decision in which he held, first, that Beker's proposed changes in point of diversion and place of use were not "to lands which may be irrigated through the same system," and that GID's consent to the changes was thus required; and, second, that DOWR was not empowered to permit a change in the nature of use of the established appropriation.

Thereafter, on February 21, 1976, Beker appealed to the district court for relief from the director of DOWR's decision. The appeal was taken pursuant to I.C. § 42–222(3) which provides for a "trial de novo" at the district court level. GID and DOWR filed responses to Beker's appeal. Two months later GID filed its motion for summary judgment, on the ground that Beker had not obtained GID's consent to change the point of diversion and place of use (I.C. § 42–108) and on the additional ground that the Director could not authorize a change in nature of use of the water. This motion was supported by reference to the proceedings before and briefs submitted to the director of DOWR. No briefs in support of or in opposition to the motion for summary judgment were filed and no hearing was held by the district court at this time. A year later GID filed a motion to dismiss based on Beker's failure under I.R.C.P. 83(h) to file a cost bond on appeal to the

district court. Rule 83(h) was promulgated on January 1, 1975, and rescinded effective July 1, 1977. Both GID and Beker submitted briefs to the court on the motion to dismiss which discussed Rule 83(h).[1]

The district court entered an order stating that the matter was before it on GID's motion for summary judgment, and discussed the merits of the motion. Concluding that the decision of the director of DOWR was correct, it dismissed Beker's appeal. Beker thereafter moved for relief from the order, for its amendment, reconsideration and to have it set aside. These motions were denied.

■ Before consideration of the principal issue presented by this appeal, two procedural problems must first be discussed. The first is whether it was necessary for appellant to post an appeal bond pursuant to I.R.C.P. 83(h) on taking the appeal from the DOWR ruling to the district court as asserted by respondent when it moved in the district court on May 5, 1977, to dismiss appellant's appeal for failure to do so. Respondent contends that if for any reason the ruling on the motion for summary judgment is not sustained, the appeal to the district court should be dismissed for lack of bond. On May 25, 1977, this court rescinded the provisions of I.R.C.P. 83(h) effective July 1, 1977, eliminating any necessity of posting a bond on an appeal to the district court. Here the trial court did not pass on this motion, but on February 14, 1978, entered summary judgment dismissing the action, not on the grounds of failure to post bond, but on other grounds. No decision being rendered until after rescission of the requirement, there would be no basis for dismissing the appeal. *See, Erickson v. Amoth,* 99 Idaho 907, 591 P.2d 1074 (1978).

■ The next procedural question presented deals with whether use of a summary judgment procedure is permissible on an appeal under I.C. § 42–222(3) from a ruling by the director of DOWR. It is our conclusion that such procedure is permissible. I.C. § 42–222(3) authorizes an appeal

---

1. At oral argument, GID conceded that I.R.C.P. 83(h) was not applicable to this case.

from a ruling by the DOWR approving or rejecting an application "to change the point of diversion, place, period of use or nature of use of water under an established right . . . ." It provides the procedure to be used to perfect such an appeal, and states, "[s]uch [an] appeal shall be heard and determined de novo." The term "de novo" generally means a new hearing or a hearing for the second time, contemplating an entire trial in the same manner in which the matter was heard and a review of previous hearing. Black's Law Dictionary 5th ed. 1979, p. 649. On such a hearing the court hears the matter as a court of original and not appellate jurisdiction. *Collier & Wallis v. Astor*, 9 Cal.2d 202, 70 P.2d 171, 173 (1937). A moving party is entitled to a motion for summary judgment when there is no genuine issue as to any material fact. I.R.C.P. 56(c). All the rules of civil procedure apply uniformly in the district court in all actions, proceedings and *appeals* of a *civil nature.* I.R.C.P. 1(a). Therefore, on appeal from the magistrate's court to the district court, a motion for summary judgment is applicable on trial de novo when there is no genuine issue as to any material fact. *Yribar v. Fitzpatrick*, 87 Idaho 366, 373, 393 P.2d 588, 591 (1964); I.R.C.P. 56(c). The same reasoning should apply to an appeal from a ruling of the Director of DOWR to the district court, and we so hold.

■■ In considering the merits of this appeal, the essential issue to be resolved is whether the director of DOWR has been granted the authority to approve an application for a requested change in the nature of the use of water.[2] The record reflects that appellant's right to the use of the water was by reason of ownership of 104 shares of stock of respondent GID.[3] The record also discloses that respondent GID was decreed its water right in the case of *Utah Power & Light Company v. The Last Chance Canal Company et al.*, dated July 14, 1920, in the United States District Court, the so-called "Deitrich Decree." Appellant by its petition before the DOWR stated that it desired to change its place of use and to

> "change from agricultural use to manufacturing to facilitate the operation of an elemental phosphorus producing plant. This application requests a change in the nature of use from irrigation to manufacturing."[4]

The DOWR denied the petition on the basis that it did not have the power to grant a change in nature of use. The district court did not discuss this issue. (District court order of February 14, 1978, C.T. p. 32)[5] We agree that the DOWR did not have the power and the respondent is entitled to a

2. Other prior appropriation jurisdictions have recognized a common law right to change the nature of use of water without losing one's appropriation date. *See Ramelli v. Irish*, 96 Cal. 214, 31 P. 41 (1892); *Gallagher v. Montecito Valley Water Co.*, 101 Cal. 242, 35 P. 770 (1894); *Seven Lakes Reservoir Co. v. New Loveland and Greeley Irrig. and Land Co.*, 40 Colo. 382, 93 P. 485 (1907); *Power v. Switzer*, 21 Mont. 523, 55 P. 32 (1898); *In re Water Rights in Alpowa Creek*, 129 Wash. 9, 224 P. 29 (1924); 2 Kinney on Irrigation and Water Rights, 2d ed. §§ 869–73 (1912). This court has never had to consider this issue, nor is such an issue presented in this case. Herein we address only the issue of whether the DOWR has the authority to grant the requested change in nature of use.

3. It is to be noted that in the title of this appeal, respondent has been referred to as Georgetown Irrigation District, although appellant in its petition for appeal in the district court alleged respondent was an irrigation *company*, which appellant "is informed and believes is a corporation organized under the laws of the State of Idaho." This allegation in the petition was admitted by the response to the petition filed by respondent and the response of the director of DOWR.

4. The petition referred to the fact that the recorded point of diversion was in the SE ¼ NE ¼ Sec. 4, Twp. 11S R. 44 E.B.M., Bear Lake Co., and that additional points of diversion are SW ¼ SE ¼ Sec. 32, T. 10 S. R. 44 E "The points of diversion are as changed by the approved transfer dated 7/15/1971."

5. "The facts that the plaintiff petitioner herein, the *stockholder user, desires to change the* point of diversion and had not obtained the consent of corporation owner, and in fact the *corporation owner refuses to give consent to* said change of point of diversion, fully determines this cause of action." District Court Order of February 14, 1978.

judgment as a matter of law. Because the answer to the question of authority is so resolved, we need not address the question of whether the proposed changes in point of diversion and place of use were to places within GID's system. It appears from the record that the only purpose for these changes was to produce elemental phosphorus.

Beker requested the changes pursuant to I.C. §§ 42 108 and 42 222(1), the same sections relied upon by the DOWR in rendering its decision in this case. These sections speak to power to grant changes in place of use and point of diversion, but not the nature of use. There is no specific language allowing the director of DOWR to approve change in nature of use. The statutes in question were repealed and reenacted in 1969. 1969 Sess.Laws, ch. 303, pp. 905 ·909. In the original version of the bill, language specifically allowing for a change in the *nature of use of water* was included. Before passage, the bill was amended twice. In the third and final version, the legislature struck the language providing for the change in the nature of use. By addressing the question directly and eliminating the provision in the amendment, this court cannot interpret this legislative action in any other manner than to say that it is not the intent of the legislature to give the DOWR the authority to grant a change in nature of use or allow an individual to make it without the possibility of abandonment.

In addition, during the 1978 legislative session, House Concurrent Resolution no. 48 was passed stating that water users should be allowed to change the nature of use of their own water rights and that I.C. § 42–222 should be amended to allow such changes. Also adopted was I.C. § 42–1736A which states that it is the legislative intent in the public interest that H.C.R. 48 be recognized as the guide for the state water plan. However, I.C. § 42–222 was not amended. Without such revisions, there are

no provisions authorizing the DOWR to approve a change in the nature of use. An administrative agency like the DOWR has only such powers as the statute or ordinance confers. Idaho Const. art. 15 § 7; I.C. § 42–1734, 42–1736; 1 Am.Jur.2d § 69, p. 865. *See also Peters v. Hobby*, 349 U.S. 331, 345, 75 S.Ct. 790, 797, 99 L.Ed. 1129, 1140–41 (1955).

As the appellant correctly points out, references to a change in the nature of use in I.C. § 42–221 providing for filing fees and I.C. § 42–222(3) providing appeal procedures remained at the time of this action. The fact that the references in these sections existed is not definitive. As the director of DOWR stated in his memorandum opinion, the remaining references appear to be an oversight in omission. This interpretation is supported by the fact that in 1978, during the same legislative session that I.C. § 42–1736A was passed, the legislature removed the reference to change in the nature of use from I.C. § 42–221. 1978 Sess. Laws ch. 143, p. 324. The remaining reference exists in § 42–222(3).[6]

In light of the more definitive action of the legislature outlined above, we cannot rely on a passing reference in § 42–222(3) for authority to allow the change in the nature of use requested here. While it may not make sense to give the DOWR authority to grant changes in place of use and point of diversion while not giving them power to grant such changes in the nature of use, we leave that incongruity to the legislature to remedy if they see fit. Until the current statutory provisions are amended there is no authority to grant a change in nature of use of water.

We have examined the cases cited by appellant in support of its claim that the DOWR was authorized to change the nature of use of water and find them unpersuasive in light of the above legislative actions. In *Hard v. Boise City Irrig. and*

---

**6.** There is also a reference to a change in the nature of use in § 42–211. This section was originally enacted in 1907. In 1967, the legislature replaced it with totally new provisions although it was called an amendment. It refers to changes in permits and seems by its history to be part of I.C. §§ 42–205–42–210. It does not apply to the instant case as the water right was acquired by decree, not permit.

**192**

*Land Co.*, 9 Idaho 589, 76 P. 331 (1904), the court only addressed the question of whether a change in place of use of water could be made. The court, however, quoted two cases, one federal and one California, which allowed changes in nature of use of water (9 Idaho at 598, 76 P. 331). As this language was unnecessary for the resolution of this case, we find it unpersuasive. In *Washington State Sugar Co. v. Goodrich*, 27 Idaho 26, 147 P. 1073 (1915), the court denied the change requested because the change was from nonconsumptive to consumptive use and would injure the water rights of other appropriators. The court, therefore, did not address the specific issue presented here. Finally, in *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937), the *only change made was from one type of* mining to another. There is a distinction between a change from one generic use to another as requested here (agriculture to manufacturing) versus a change within a category of use in light of the fact that the Idaho Constitution grants a priority of appropriation based on the nature of use. (Art. 15, § 3) The change here would lower the priority of the appellant for appropriation where the change in *Zezi* did not. There are no cases in Idaho where a change from one type of use to another has been upheld.

Therefore, DOWR was without authority to authorize a change in the nature of the use and therefore there are no factual issues in dispute. We decline, to address the other issues raised by the appellant, and affirm the district court's granting of the motion for summary judgment. Costs to Respondent.

DONALDSON, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.